**NATIONAL ASSOCIATION OF BLUE SHIELD PLANS, Appellant,**

v.

**The STANDARD MATTRESS COMPANY, Appellee.**

**Patent Appeal No. 8960.**

United States Court of Customs and Patent Appeals.

June 14, 1973.

**1254**

household use and not for hospital use,"[2] of the following mark:

[A7544]

Appellant is The National Association of Blue Cross Plans, the plans associated with which are engaged in underwriting the expense of medical care under the trade name and service mark "BLUE SHIELD," and it is the owner of registrations covering the collective service mark BLUE SHIELD,[3] a service mark comprising a representation of a blue shield,[4] a collective service mark comprising a blue shield with a caduceus thereon,[5] a collective service mark comprising a shield (no color claimed) with a caduceus,[6] all essentially for underwriting medical care on a prepayment basis, and of the mark THE BLUE SHIELD with a representation of a shield with a caduceus interposed between "Blue" and "Shield" for newspaper and news releases issued monthly.[7]

Melville Owen, Welton B. Whann, Owen, Wickersham & Erickson, San Francisco, Cal., attorneys of record, for appellant.

Ellsworth M. Jennison, Arlington, Va., attorney of record, for appellee. Sidney W. Russell, Arlington, Va., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and AL-MOND, Senior Judge.

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board[1] dismissing an opposition to the registration by appellee for "mattresses for

Appellant's priority is uncontested. It states that the issue is "whether mattresses are so related to 'Health' and 'Doctors' that applicant's use of the mark it seeks to register is likely to cause confusion, mistake or deception." It further charges that applicant's mark "falsely suggests a sponsorship and/or endorsement by" appellant. The board did not find either a likelihood of confusion, mistake, or deception under 15 U. S.C. § 1052(d), or that appellee's mark falsely suggests a connection with opposer within the meaning of 15 U.S.C. § 1052(a).

1. 168 U.S.P.Q. 380 (1970); see also In re Standard Mattress Co., 153 U.S.P.Q. 864 (T.T.A.B.1967).

2. Application Serial No. 198,518, filed July 2, 1964.

3. Registration Nos. 557,037 and 557,040, issued April 1, 1952.

4. Registration No. 562,430, issued July 29, 1952.

5. Registration No. 591, 778, issued June 22, 1954.

6. Registration No. 617,304, issued December 6, 1955.

7. Registration No. 821,988, issued January 10, 1967.

Appellant introduced evidence that it advertises the services rendered under its trademarks, with its 1967 budget for advertising amounting to $436,000. Its vice president stated that local plans spend approximately $7,500,000 to $10,000,000 a year on advertising but did not give any particular factual foundation for the statement. The evidence shows that the Blue Shield Plans have a total enrollment of 62,300,000 persons.

The issue turns, however, on appellant's efforts to show, through testimony of its vice-president, that mattresses bear a relationship to its services because they constitute a health care product. The board summarized the testimony on that point as follows:

(1) The witness is aware that in advertisements by mattress companies, they speak of comfort but they also allude to the healthful nature of their mattress.

(2) The witness knows that Sealy Posturpedic Mattress Company exhibits at the annual meetings of the American Medical Association.

The board found no documentation of the first item. As to the second, it noted that the witness failed to provide a responsive answer to a question whether the mattress displayed at the AMA meeting were those sold strictly to hospitals or were for use by the general public in their homes as well. It found that the proofs were not persuasive that mattresses for household use are health care products.

Before us, appellee cites several decisions of the Commissioner of Patents, the Trademark Trial and Appeal Board and the courts showing that trademarks which it considers related to health or used a form of the word "health" have been applied to mattresses. As an example, one of the cases is Sleepmaster Products Co. v. American Auto-Felt Co., 241 F.2d 738, 44 CCPA 784 (1957) wherein the mark "HEALTHMASTER" was involved. Another case, The Spring-Air Co. v. National Mattress Co., 145 USPQ 741 (TTAB 1965), involved

"Health Center." Appellant also cites the apparently unpublished decision in Mayo v. National Mattress Co., No. 1249 (S.D.Ill.1934), in which it was decided that the defendant's use of "Dr. Mayo" on its mattresses violated the rights which the famed Mayo Brothers had in their name. Finally, at oral argument, appellant asked this court to take judicial notice that mattress sellers allude to the healthful nature of their mattresses in their advertising, sometimes stating that certain mattresses were designed with the aid of doctors.

Even accepting appellant's contentions concerning the healthful nature of mattresses and the advertising practices utilized in that industry, we are not satisfied that mattresses are sufficiently related to health, medical care or doctors so that use of the marks before us would lead to a likelihood of confusion or false suggestion. As appellee points out, the *Mayo* case is not controlling here, for in that case there were actual misrepresentations made that there was a connection between the mattresses sold and the Mayo brothers or the Mayo Clinic. We also note that the differences between the shields used by appellant and appellee, appellee's shield having initials rather than the caduceus associated with the medical profession, would tend to dispel any possibility of false suggestion at least to some degree. In sum, despite the fact that appellant's marks are very strong in their field, we find no basis for concluding that use of appellee's mark for mattresses for household use would be likely to result in confusion, mistake or deception or would falsely suggest a connection with appellant.

The decision is affirmed.

Affirmed.

MARKEY, Chief Judge (dissenting).

The *fame* of Blue Shield plus the association of health with mattresses is likely to lead to confusion, of which assumed sponsorship is one form. The marks are likely to be spoken at least as

much as seen, making the shield of little effect. The *climate* for actual misrepresentation, i. e., a *likelihood* of confusion, seems clear.